Emelo Belmonte, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Submitted on briefs, October 4, 1979, before Judges CRUMLISH, JR., DISALLE and MACPHAIL, sitting as a panel of three.

*Diane Upson*, for petitioner.

No appearance for respondent.

OPINION BY JUDGE CRUMLISH, JR., December 20, 1979:

The Department of Public Welfare (DPW) affirmed the decision of the Chester County Board of Assistance (CCBA) which found the Belmonte family ineligible for medical assistance benefits.[1]

---

[1] Medical assistance (MA) benefits are encompassed in 42 U.S.C. §1396 et seq., provided for by Section 441.1 et seq. of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, added by the Act of July 31, 1968, P.L. 904, *as amended*, 62 P.S. §441.1 et seq., and administered pursuant to Public Assistance Eligibility Manual (PAEM) §177.81 et seq., which is codified at 55 Pa. Code §177.81 et seq.

Belmonte, his wife, and four children receive a monthly income of $634.60 from Social Security disability benefits (SSA).[2] On September 15, 1977, they were notified that MA benefits would be discontinued because their monthly SSA family income exceeded public assistance eligibility standards. Discontinuing benefits pursuant to DPW regulation 177.83(b),[3] the CCBA made the following calculations:

| | |
|---|---|
| $ 338.10 | Mr. Belmonte's monthly SSA benefits |
| 59.30 | Mrs. Belmonte's monthly SSA benefits |
| +237.20 | Four children's monthly SSA benefits |
| $ 634.60 | Total monthly gross income |
| +8.20 | Mr. Belmonte's medicare |
| $ 642.80 | |
| —20.00 | TJ category disregard |
| $ 622.80 | Total net monthly gross income |
| x6 months | |
| $ 3,736.80 | Income for six months |
| —2,875.00 | Maintenance for six persons |
| $ 861.80 | |
| —420.00 | Medical expenses allowed for six months ($70 per month) |
| $ 441.80 | Income available for MA purposes |

They are considered to have $441.80 available for medical purposes, and are ineligible for MA benefits in the "medically needy" category. Being DPW's final administrative action, it is ripe for our determination.

---

[2] Petitioner makes a general reference to Social Security disability benefits. After review of the briefs and record, we can only assume that he is a recipient of Federal Old Age, Survivors and Disability Insurance (OASDI) benefits pursuant to Subchapter II of the Social Security Act, 42 U.S.C. §401 et seq.

[3] 55 Pa. Code §177.83(b).

This case strikingly resembles the legal and factual incidents in *Carr v. Department of Public Welfare*, 41 Pa. Commonwealth Ct. 254, 398 A.2d 1088 (1979). In *Carr*, an AFDC[4] grant was discontinued because the family's OASDI benefits exceeded eligibility standards for public assistance. In affirming the DPW determination, we encountered analogous arguments. As here, petitioner asserts that the PAEM policy dealing with eligibility is inconsistent with the Social Security Act, applicable regulations, and the equal protection clauses of the United States Constitution and the Constitution of Pennsylvania. We disagree.

MA is a federally-mandated welfare program administered by DPW to provide assistance to persons "whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. §1396. Federal eligibility regulations specifically provide that "all income must be included such as social security or other benefits, earnings, contributions from relatives, or other income the individual may have." 45 C.F.R. §233.20(a)(4) (1978). MA eligibility in Pennsylvania is similarly determined by total resources to the family unit. 55 Pa. Code §177.81.

Belmonte maintains that his income cannot be considered available to meet the needs of his family until a factual determination of his own monetary needs are made. He supports this proposition with Department of Health, Education and Welfare (HEW) regulations which govern the expenditure of social security benefits certified to a representative payee on behalf of incompetent beneficiaries. 20 C.F.R. §404.1601 et seq. (1979). Essentially, these regulations allow the representative payee to apply certified payments for

---

[4] Aid to Families with Dependent Children grants are provided for by 42 U.S.C. §601 et seq. Note that the cases are similar except for the fact that an AFDC grant was discontinued in *Carr*, whereas in the instant case, an MA grant was eliminated.

support of the beneficiary's family only after the beneficiary's current maintenance needs are met. Belmonte seeks to superimpose the representative payee standard on a beneficiary receiving benefits in his own name. In accordance with *Carr, supra,* at 257, 398 A.2d at 1090, we disagree. Aside from the fact that no representative payee exists here, these regulations were specially designed to protect beneficiaries whose benefits are paid to and expended by third parties. 20 C.F.R. §404.1601 (1979). Petitioner clearly maintains control over the family's SSA benefits.

Belmonte next argues that DPW's state plan violates HEW regulations[5] by failing to provide a "minimum level of living" which takes into account personal needs and obligations when relatives are required to provide support to public assistance applicants. However, he ignores that section of the regulation which makes the spouse or parents' income available to the family group with which one lives, and removed the income of spouses and parents from the income scale requirement. Assuming a minimum income scale were applicable, the income level in Pennsylvania for a family of six is approximately $479.00 per month. 55 Pa. Code §177.83(b). There is nothing in either the record or arguments which convince us that this standard is below the minimum level of living. Compare *Carr, supra,* at 259, 398 A.2d at 1090. Petitioner also urges inadequacy on the grounds that Supplemental Security Income[6] (SSI) regulations provide greater benefits. We remain unconvinced that the SSI minimum income scale establishes either a uni-

---

[5] HEW regulation 45 C.F.R. §233.20(a)(3)(vi) (1978), requires an "income scale" and a "minimum level of living" be provided as a guideline for determining a relative's responsibility for support of applicants and recipients.

[6] 42 U.S.C. §1381 establishes a separate welfare program providing SSI to individuals who have attained age 65 or are blind or disabled.

versal standard or a minimum level of living for the needs of disabled persons living in family units. *See Carr, supra, id.*

Belmonte's final argument is that PAEM policy denying MA benefits violates his constitutional right to equal protection of the laws in that lower benefits result to SSA than SSI beneficiaries and their families.[7] The test for deciding the equal protection constitutionality of social welfare programs is set out in *Dandridge v. Williams*, 397 U.S. 471, 485 (1970), where it was held that ''a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some '*reasonable basis*', it does not offend the Constitution simply because . . . in practice it results in some inequality.'' (Emphasis added.)

We need not resort to a pedantic recitation of supporting statistics. It is simply our opinion that a reasonable basis exists for treating benefits differently in the calculation of family income. This issue was raised and decided adversely in *Carr*. There, we held that the application of OASDI and not SSI benefits against an AFDC grant to determine eligibility did not violate equal protection principles. *Carr, supra,* at 260, 398 A.2d at 1091. We find nothing to induce us to distinguish or overrule the well-articulated opinion of Judge Rogers in *Carr* merely because AFDC rather than MA benefits were denied.

Accordingly, we

### Order

And Now, this 20th day of December, 1979, the decision of the Department of Public Welfare is hereby affirmed.

---

[7] Under SSA, the Belmonte family receives $634.60 of monthly income, while as SSI recipients, they would receive a total of $644.80.